## GUARDIAN SAVINGS & TRUST CO. v. GEORGE W. JOHNSON COLUMN FORM CO.

(Circuit Court of Appeals, Seventh Circuit. March 19, 1924.)

No. 3263.

1. Patents ⬡328―942,169, for means for forming concrete columns, claims 3 and 4, held void.

The Deslauriers patent, No. 942,169, for means for forming concrete columns, comprising a split casing in telescoping sections, claims 3 and 4, *held* void, as not within the disclosure of the specifications, and on other grounds.

2. Patents ⬡328―944,543, for means for forming concrete ceiling and supporting columns, held void for lack of invention.

The Deslauriers patent, No. 944,543, for means for forming concrete ceiling and supporting columns, claim 1, for a sheet metal mold shaped to form the top of a column, with a flange at the top on which is placed a plate to support the ceiling in setting, *held* merely for an aggregation of old devices, and void for want of invention.

3. Patents ⬡328―1,143,107, for means for forming unitary column and ceiling, held void for lack of invention.

The Deslauriers patent, No. 1,143,107, for means for forming unitary column and ceiling, claim 1, *held* void for lack of invention; also *held* not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Guardian Savings & Trust Company against the George W. Johnson Column Form Company. Decree for defendant, and complainant appeals. Affirmed.

Geo. T. May, Jr., of Chicago, Ill., for appellant.

Donald M. Carter, of Chicago, Ill., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PAGE, Circuit Judge. Plaintiff appellant, called plaintiff, sued defendant appellee, called defendant, charging infringement of claims 3 and 4 of letters patent No. 942,169, issued to the Deslauriers on December 7, 1909; claim 1 of letters patent No. 944,543, issued to the same parties on December 28, 1909; claim 1 of letters patent No. 1,143,107, issued to the same parties on June 15, 1915; and claim 1 of letters patent No. 1,222,822, issued to Venable on December 29, 1914. Upon the trial, the plaintiff dismissed the suit as to the Venable patent, and the court dismissed the bill for want of equity as to the three Deslauriers patents.

[1] Claims 3 and 4 read as follows:

"3. Means for molding concrete columns comprising a split casing composed of telescoping sections, and means surrounding the overlapping portions of the outer sections for contracting the same upon the inner sections.

"4. Means for forming concrete columns comprising a split casing composed of inner and outer sections, the outer sections telescoping over the inner sections, and means for adjustably clamping the overlapping portions of the outer sections upon the inner casing sections for the purpose set forth."

With the exception of claim numbered 6 (now claim 11 and not involved in this case), all of the seven claims first presented to the Patent Office were disallowed. Each of those claims dealt with a split casing, and the first six included, as one of the elements, templet frames inclosing the casing. The seventh claim covered a side door element. No claim made reference to telescoping sections, or to any covering or clamping of overlapping joints. In claim 2, subsequently presented, telescoping sections and templet frames, inclosing the overlapping sections of said casings, were introduced as elements, and in claim 3, telescoping sections and a series of templet frames inclosing said casing, were included as elements. As an argument for the allowance of those claims, patentees urged:

"Another respect in which applicants' construction differs from those of the references is in having the casing made up of a series of sections with templet frames *covering the overlapping edges of the casing sections.*" (Italics are ours.)

Claims 1 and 2 were rejected. That rejection was acquiesced in and two new claims were presented. In claim 1 "a plurality of telescoping sections * * * and a plurality of templet frames, inclosing said casing, *each frame covering the overlapping edges of adjacent sections,*" and in claim 2 telescoping sections and templet frames, inclosing the overlapping portions of said sections, were included as elements. To avoid the references and procure the allowance of those claims, patentees urged that:

"None of the references show a casing made up of telescoping sections with templet frames *covering the overlapping edges of adjacent sections.*" (Italics are ours.)

Thereupon those claims were allowed, and later an amended application was made, in which changes in claims then numbered 1 and 2, not here material, were made, and two more claims were presented, that were subsequently rejected. Another amendment presented further claims that were rejected. Still later, seven additional claims were

presented and all of them were allowed, and claims 3 and 4, then presented, nearly two years after the first application, are claims 3 and 4 in suit. The allowance of those claims were procured upon the following argument:

"In place of claims 3 and 4, new claims have been inserted to bring out more clearly the fundamental differences between applicants' invention and the references. Primarily there is not one of the references composed of telescoping sections. In Hodgert, the sections rest flush one upon the other. Second, in applicants' there are clamping means for squeezing the overlapping ends of the outer sections tightly upon the inner sections, said clamping means extending beyond the free edges of the outer sections, thus constituting a tight nonleaking joint between the sections. In Hodgert [patent No. 793,194] the band $D$ simply surrounds the flush ends of the sections, cannot squeeze one upon the other, and cannot constitute a tight joint."

In that argument patentees stressed the fact of the great success of their invention, constructed in accordance with the claims. There are fundamental difficulties in these claims:

First. They cannot be read upon the disclosures of the patent. There is no reference in the written specifications to telescoping sections. The sole mention of "sections" in the specifications is:

"The casing $A$ may consist of a series of sections suitably secured together and connected by bolts $17$."

Figure 1 of the patent consists of three sections. The middle section fits over the lower end of the upper section and the upper end of the lower section, and in each case the sections are rigidly bolted together by bolts $17$. It is merely the fixed telescopic joining, long used in boiler and other constructions, and in this patent is used only to indicate the connection of two sections in the manner specified for the sole purpose of making the desired length of casing. The specifications describe rather minutely the templet frame, but the sole use assigned to it is:

"In use the casing will be set up as shown in the drawings, adjusted to the proper size, and reinforced and held in shape by the templet frames."

Here the templet frames are given the important duty of reinforcing and holding in shape the long sheet metal casing upon which, in use, there is much stress and strain. No reference is made to the use of them to clamp or cover the overlapping telescopic joints that are *"suitably secured together and connected by bolts 17."* (Italics are ours.)

Referring again to Figure 1, we find three templet frames, one at the top, one at the bottom, and the third near the middle of the casing above, but not covering, the overlapping joint between the lower and the middle sections. The connecting and securing bolts $17$ are plainly visible. There is no templet frame at or near the overlapping joint, connecting the middle and the upper sections. Here, also, the connecting and securing bolts $17$ are clearly visible. Counsel note that fact and seek to explain it by saying that the absence of the templet was due to an oversight on the part of the draftsman. In view of the fact that the specifications say that the casing is to be reinforced and held in shape by the templet frames, it would seem that the draftsman placed

them according to the teaching of the specifications. That the idea of surrounding or clamping the overlapping portions of the sections was wholly an afterthought is evidenced, not only by the fact that no such thing is disclosed in the written specifications or in the figures, but by the further fact that it was not covered or disclosed in the original claims.

Counsel seem to have sensed difficulty in reading the claims upon the disclosures of the patent, because of the fact that there is no disclosure of any "means surrounding the overlapping portions of the outer sections for contracting the same upon the inner sections." They point out that it is only claim 3 that so limits the location of the contracting templet, and, while they say that this is the preferred location, they further say that the "means for adjustably clamping the overlapping portions of the outer section upon the inner casing section, for the purpose set forth," in claim 4, does not definitely locate the templet anywhere.

We are of opinion that the only fair inference to be drawn from the language of claim 4 is that the clamping or contracting means is to be applied directly upon the parts that are to be clamped, the one upon the other. It is inconceivable that the claim should be so read or construed that the all-important thing of clamping or contracting the overlapping portion of the outer section upon the inner section was to be, or could be, effectively accomplished by applying the clamping or contracting force, not directly upon the overlapping parts, but away from the overlapping parts upon the single thickness of what counsel in argument say is a flimsy shell. Any other reading of the claim would be inconsistent with the interpretation of the claim made by patentees in the Patent Office, and upon which they procured the allowance of the claims in question. They twice told the Commissioner of Patents that their templet casing was "made up of a series of sec-. tions with templet frames covering the overlapping edges of the casing sections," and when claims 3 and 4 were filed they again told the Commissioner that their invention differed from the references in that, "in applicants' there are clamping means for squeezing the overlapping ends of the outer sections tightly upon the inner sections." This latter language can be taken to mean nothing, unless it means that the squeezing of the overlapping ends was to be accomplished by applying the force directly upon the overlapping ends with the clamping means.

Second. In this discussion we have accepted the templet frames of the specifications, as the last element or means of the claims, simply because counsel have adopted it in their discussion as the means of the claims, and because the patentees repeatedly told the Commissioner that the templet frames were the means by which the overlapping part of the outer section was clamped or contracted upon the inner section, but the claims are not so limited. As drawn, any device by which the overlapping portions of the casing could be surrounded, clamped, or contracted at the place of overlapping would meet the language of the claims. Two sections of stovepipe, split longitudinally, tied with a string, or other device, so as to contract the overlapping outer casing upon the inner casing, would respond to the elements of the claims, and

their use for the purpose of molding a column would infringe claims 3 and 4, if the claims are valid.

Third. The third fundamental difficulty is that two or more telescoping sections of split casing, with a clamping or contracting device surrounding or near the telescoping joints, would not make a mold usable for any purpose. A mere glance at the specifications and the figures of the patent will show how far the elements of the claims fall short of meeting the requirements of "a means for constructing concrete columns," as disclosed in the specifications. In Plaintiff's Exhibit 22, the "foreword" says:

"The purpose of this publication is to present comprehensively and by exact illustration, the economical features and advantages in construction of the round concrete column as built by our methods."

On page 4 of the exhibit is "Elevations Showing Mold Lengths Assembled," and also an enlarged portion of two sections, showing the method of joining the ends together. In the elevation, three sections are used. The bottom length is 81 inches, the middle 36 inches, the top 18 inches. There is at the top a fourth section, expanded at its upper end, but the column throughout its length is surrounded by something resembling the templet frames of the patent, eight in number, spaced each equidistant from the other. The telescoping feature, so strongly urged upon the Patent Office, is wholly lacking. One section sets squarely upon the other below it, and the contacting joint connection is described in the exhibit as follows:

"Detail of shaft showing method of making the horizontal seams by means of bolts and the joint collar $H^3$, the proper length sections are bolted together for length $F$ (of elevation) on a bench or floor, then stood in place around the spiral, after which the vertical seams are made with small keys and wedges $H^2$. After all seams are made, the proper size ring or band $H^4$ [the templet frame] is put around shaft and joined at back with wedge $F^3$ (of elevation), with lever, in front, in position shown by dotted lines at $H^1$. When wedge is at proper depth, push in lever as shown."

It also appears from page 4 that plaintiff says the section lengths are made in multiples of nine, and, while it appears that a clamping templet is placed around the collar bolted to the abutting ends of the sections, they appear with the same regularity at other points upon the shaft. This exhibit may not be of a great deal of importance, but it does indicate that in practical use the telescopic feature, made so much of for the purpose of procuring the allowance of the claims, has fallen below the inconspicuous place occupied by it in the specifications and drawings. It has wholly disappeared. The templet frames are given the places upon the casing assigned to them in the specifications, so that they will reinforce and hold it in shape, and the clamping of the telescoping joints, there being no such joints, has wholly disappeared. The exhibit also shows that plaintiff has adopted the flush ends and the band $D$ of the Hodgert patent, No. 793,194, which patentees, in order to procure the allowance of the claims in suit and other claims, told the Patent Office constituted the difference between the Hodgert invention and plaintiff's invention, because in the Hodgert invention there was no outer telescoping section that could be squeezed upon the inner section.

We are of opinion that the claims are invalid.

Patent No. 944,543.

[2] Claim 1 is as follows, viz.:

"Means for forming a concrete ceiling and connected columns, comprising a sheet metal mold shaped to form the top of each column, an outwardly bent supporting flange formed on the upper edge of said mold, and plates entirely surrounding said mold and overlapping said flange for the purpose of molding the adjacent portion of the ceiling."

A sheet metal band of any size, height, or shape that could be used for a mold for a top of a column would respond to the first element. Any lip, flange, or bracket, bent out or fastened upon the upper edge of the mold, would meet the language of the second element. "Plates entirely surrounding said mold and overlapping said flange" is broad enough to include any sort of a plate with a hole through it as large as the opening in the mold. This last element is somewhat misleading. It does not surround the mold at all, but is above it, being laid upon top of the flange, so that the hole through it is over the top opening of the mold, and, to the extent of its thickness, it increases the height of the mold. The words, "for the purpose of molding the adjacent portion of the ceiling," are misleading. The plates are laid upon the flange, and merely support the concrete of the ceiling while it sets.

Forming a lip, flange, or bracket on the top edge of a mold is not different from forming one on the top edge of a capital of a column, or the top edge of anything, where desired for support or added strength. Almost every sort of container has such a lip or flange. The old, double-walled protecting thimble, surrounding a stovepipe where it passed through the ceiling on its way to warm an upper room, carried a supporting flange. Every capital is in effect only a flange, or bracket, upon the top of the column, and in the building where this court is housed there are more than half a hundred Corinthian capitals bearing flanges as a part of their tops. The top stone of many capitals spreads out and carries the superstructure, just as plaintiff's plate carries the concrete. The origin of the flanges or volute brackets of the Corinthian and Ionic columns and of the abicus upon the top of the capital is shrouded in the mists of antiquity.

The top of almost every cistern is constructed and finished with a strengthening flange made of masonry or of a metal ring, upon the top of which, in the days of the old chain pump, was laid a platform or plate, by which the pump was supported, and upon which people stood and were supported when drawing water from the cistern. In the plate or platform, was a hole, over which the pump was set, and through which the tubing and the chain passed and the pump operated. Everywhere, every day, we come in contact with the simple elements of this claim in a variety of combinations. What patentees cover by claim 1 of this patent is mere aggregation, and not invention.

Patent No. 1,143,107.

[3] Claim 1 reads as follows:

"Means for forming a unitary column and ceiling comprising movable ceiling molding means formed with an opening, a supporting framework therefor formed with an opening aligning with said ceiling mold opening, a mold for

the top of the column arranged within said framework opening, an outwardly bent flange carried by the upper edge of said column top mold, and blocks removably carried by said ceiling mold supporting framework inside said framework opening in position to extend underneath and form a support for said flange."

Plaintiff says that this invention "consists in providing means for so supporting the mold for forming the top of the column that it may easily be taken down without interfering with the supporting framework for the ceiling mold." It is quite impossible to understand how the placing of a block of wood underneath a thing to be supported, and then clamping it in that position against a fixed framework by use of a pair of ordinary joiner's clamps, could constitute invention. If it does constitute invention, then plaintiff must be limited to the device shown; otherwise, its patent would be so broad as to cover any removable support. Defendant used old and well-known angle iron brackets of common construction.

We are of opinion that this patent does not disclose invention, and that it is not infringed.

The conclusions herein reached were concurred in by Judge BAKER before his death.

The decree is affirmed.